**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Michael J. CORBITT, Defendant.**

**Pulitzer Community Newspapers, Inc., Intervenor–Appellee.**

No. 88–2746.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1989.

Decided June 19, 1989.

---

Chris Gair, David J. Stetler, James R. Ferguson, Asst. U.S. Attys., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Matthew A. Flamm, Richard Orlikoff, Orlikoff & Flamm, James I. Marcus,

Williams & Marcus, Jeffrey Schulman, Chicago, Ill., for Michael J. Corbitt.

Matthew A. Flamm, Richard Orlikoff, Scott A. Weiss, Orlikoff & Flamm, Chicago, Ill., for Pulitzer Community Newspapers, Inc.

Before, CUDAHY and MANION, Circuit Judges, and HENLEY, Senior Circuit Judge.*

CUDAHY, Circuit Judge.

This appeal requires that we decide whether, and under what circumstances, a district court may release the presentence investigation report of a criminal defendant to members of the news media. The district court authorized disclosure of the defendant's presentence report under the "common law right of access" to judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The government appeals, arguing that the district court applied an incorrect legal standard in determining whether disclosure was appropriate. We vacate the district court's disclosure order and remand for reconsideration under the appropriate legal principles.

## I.

### Facts and Proceedings Below

The defendant, Michael Corbitt, served as Chief of Police of the Village of Willow Springs, Illinois for approximately ten years, ending in 1982. On May 20, 1987, Corbitt was indicted in the Northern District of Illinois on three counts of extortion and racketeering, in violation of 18 U.S.C. sections 1951 and 1962(c) and (d). The indictment alleged that, during his tenure as Chief of Police, Corbitt accepted bribes in exchange for permitting various criminal enterprises to operate with impunity, and that he extorted payments from businesses in Willow Springs and elsewhere. Corbitt pled guilty to all three counts; he was sentenced on January 11, 1988 to four years on each count, the sentences to run concurrently.

At Corbitt's sentencing, Judge Prentice Marshall stated that he had decided to impose a sentence lower than that recommended in the presentence report due to an unprecedented, and apparently spontaneous, torrent of letters written on Corbitt's behalf. In statements directed at the defendant, the judge remarked that "[o]ne of the things that struck me about [the letters] is not just that ordinary folk have come forward in your behalf, but ... elected ... and appointed public officials in the community in which you have resided, have come forth for you."

Corbitt's sentencing provoked an outcry in Willow Springs; Village residents expressed a strong interest in learning which public officials had written letters, many apparently on official letterhead, seeking leniency for Corbitt. Three days after Corbitt's sentencing, the Board of Trustees of Willow Springs unanimously approved a resolution stating that no Village official had been authorized to use his or her office to secure a lighter sentence for Corbitt; the board also sent a letter to Judge Marshall, asking him to allow public access to the letters written by Village officials.

The *Southtown Economist,* a newspaper covering the Village of Willow Springs, reported extensively on Corbitt's conviction and sentencing. On January 19, 1988, Pulitzer Community Newspapers, Inc. ("Pulitzer"), publisher of the *Southtown Economist,* moved to intervene in Corbitt's case to secure release of the presentence report and testimonial letters on which Judge Marshall had relied in sentencing. Pulitzer argued that, since Corbitt's conviction involved misconduct in office, the entire criminal proceeding was "affected with a public interest." Pulitzer also asserted that the public had an especially strong interest in learning what factors, possibly including the pleas of Village officials, had persuaded the district court to impose what was perceived to be an inordinately lenient

---

* The Honorable J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

sentence. Corbitt objected to disclosure of any sentencing materials which had not previously been disclosed during the sentencing hearing; however, he declined to file a brief opposing Pulitzer's motion in the district court, and has not participated in this appeal. The United States filed a brief stating that, while it did not object to disclosure of the unsolicited letters written on Corbitt's behalf, it opposed the disclosure of any part of Corbitt's presentence report.

On August 24, 1988, the district court issued a memorandum opinion granting Pulitzer substantial access to the presentence report and letters. Judge Marshall began his opinion by noting that prior decisions of this court, which held that a criminal defendant must show a "compelling need" for disclosure of the presentence report of a government witness, were not controlling because, in those cases, "no third party had sought release of [the] presentence report." The court then noted that, through a series of amendments to Federal Rule of Criminal Procedure 32, there had been a "gradual relaxation" of the traditional secrecy of the presentence report, culminating in the current version of Rule 32, which mandates defense access to the report in every case. Relying on *United States v. Schlette*, 842 F.2d 1574 (9th Cir.1988), the court also rejected the government's argument that the "free flow of information" to the sentencing judge would be curtailed if the report were made public.

Judge Marshall declined to rely on the first amendment right of access to criminal proceedings as a basis for disclosure, but instead turned to the "common law right of access" to judicial records recognized in *Nixon v. Warner Communications, Inc.*,

435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Under this theory, according to the district court, the party seeking access to a document "must identify a proper interest in the information it seeks; for instance, 'the citizen's desire to keep a watchful eye on the workings of public agencies' or 'a newspaper publisher's intention to publish information concerning the operation of government.'" Once such an interest is shown, a presumption arises that disclosure is appropriate; the party opposing disclosure may only defeat the presumption by identifying, with specificity, interests in confidentiality which outweigh the right of access.

The court found that Pulitzer's "assertion of a public interest in keeping watch over official misconduct triggers application of the common law right of access to judicial records." Judge Marshall also held that the government had failed to rebut the presumption of openness, since it relied on "conjectural statement[s]" regarding the general policies served by confidentiality, rather than on specific facts which counselled against disclosure of *Corbitt's* presentence report in particular. The court observed that the government's concern over the potential harm to witnesses mentioned in the report could be addressed by redacting portions of the report identifying witnesses whose names had not been disclosed in open court. The court also determined, *sua sponte*, that certain portions of the report should be redacted to protect the privacy of the defendant and others. However, except for the redactions, Pulitzer was given access to the entire presentence report. The government appeals; Judge Marshall has stayed the disclosure authorized by his opinion pending resolution of the appeal.[1]

---

1. Since the issue of disclosure of the presentence report is independent of the merits of the criminal prosecution of defendant Corbitt, we have jurisdiction over the government's appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). *See United States v. Gerena*, 869 F.2d 82, 83–84 (2d Cir.1989); *Application of Nat'l Broadcasting Co.*, 828 F.2d 340, 343 (6th Cir. 1987); *In re New York Times Co.*, 828 F.2d 110, 113 (2d Cir.1987), *cert. denied sub nom. Esposito*

*v. New York Times Co.*, —— U.S. ——, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *In re Continental Ill. Sec. Litiq.*, 732 F.2d 1302, 1307–08 (7th Cir. 1984); *United States v. Dorfman*, 690 F.2d 1230, 1231–32 (7th Cir.1982).

The government did not object in the district court to disclosure of the letters written on Corbitt's behalf, and does not challenge disclosure of the letters on appeal. This opinion therefore only addresses the propriety of disclosure of Corbitt's presentence report.

## II.

### Source of the District Court's Authority to Disclose Corbitt's Presentence Report

Pulitzer argues that disclosure of Corbitt's presentence report is warranted under either of two separate, but related, legal theories: (1) the common law right to inspect and copy judicial records, or (2) the first amendment right of access to criminal proceedings.

### A.

### The Common Law Right of Access to Judicial Records

In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court recognized a "common law right of access" to judicial records. This right of access establishes, as a general matter, that court files should be open to the public for inspection and copying. However, the Court observed that the "common law right of access" is a flexible concept, which allows the district court to deny access where its records would be used for "improper purposes"; specifically, the discretionary decision whether to release judicial records should be informed by a "sensitive appreciation of the circumstances that led to ... [the] production [of the particular document in question]." *Id.* at 598, 602–03, 98 S.Ct. at 1312, 1314–15; *United States v. Edwards*, 672 F.2d 1289, 1293 (7th Cir.1982).

■■■ While this court has recognized that the common law right of access creates a "strong presumption" in favor of public access to materials submitted as evidence in open court, *id.* at 1294, this presumption should not apply to materials properly submitted to the court under seal.[2] Where judicial records are confidential, the party seeking disclosure may not rely on presumptions, but must instead make a

specific showing of need for access to the document. Of course, the public's right to inspect judicial documents may not be evaded by the wholesale sealing of court papers. Instead, the district court must be sensitive to the rights of the public in determining whether any particular document, or class of documents, is appropriately filed under seal. The question then becomes whether presentence reports are properly filed under seal; we discuss below the interests which support the confidentiality of presentence reports.

### B.

### The First Amendment Right of Access to Criminal Proceedings

■■■ The first amendment right of access to judicial proceedings provides no broader right to disclosure of the presentence report. The Supreme Court has conducted a two-pronged inquiry in order to determine whether any particular stage of a criminal proceeding should be open to the public: first, the Court has considered "whether the place and process have historically been open to the press and general public," *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986); second, the Court has asked "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* We believe that Pulitzer's assertion of a right to inspect Corbitt's presentence report fails to satisfy either prong of this "experience and logic" test.

As a preliminary matter, we note that this court has held that the first amendment right of access extends to documents submitted in connection with a judicial proceeding. *See, e.g., United States v. Peters*, 754 F.2d 753, 763 (7th Cir.1985); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1308–09 (7th Cir.1984).[3] However, the

---

**2.** *See The Times Mirror Co. v. The Copley Press, Inc.*, 873 F.2d 1210, 1219 (9th Cir.1989) ("there is no [common law] right of access to documents which have traditionally been kept secret for important policy reasons"); *In re Application of Nat'l Broadcasting Co., Inc.*, 635 F.2d 945, 952 n. 4 (2d Cir.1980); *United States v.*

*Carpentier*, 526 F.Supp. 292, 295–96 (S.D.N.Y. 1981); *cf. United States v. Dorfman*, 690 F.2d 1230, 1233 (7th Cir.1982).

**3.** *See also, e.g., The Times Mirror Co. v. The Copley Press, Inc.*, 873 F.2d 1210, 1214 n. 4 (9th Cir.1989); *Globe Newspaper Co. v. Pokaski*, 868

press' right of access to documents submitted for use in a hearing must be considered separately from the press' right to attend the hearing itself. *United States v. Dorfman*, 690 F.2d at 1234; *see also United States v. Smith*, 776 F.2d 1104, 1111–12 (3d Cir.1985) (considering press' right to inspect criminal indictment separately from acknowledged right to attend trial). Whether or not the public and the press have a first amendment right of access to sentencing *hearings*, we must determine independently whether there is a right to disclosure of presentence reports submitted at such hearings.[4] *See United States v. Santarelli*, 729 F.2d 1388, 1390–91 (11th Cir.1984) (distinguishing between presumptive openness of sentencing hearings, and general confidentiality of presentence reports and hearings at which defendant challenges report's contents).

■ It is clear that presentence reports have traditionally been confidential—indeed, it is only in the past 25 years that the *defendant* has had access to the presentence report, either as a discretionary matter or as of right. *See Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (no denial of due process where sentencing judge considered presentence report which was not disclosed to defendant); *infra* at 236 (discussing amendments to Fed.R.Crim.P. 32(c) to insure defendant a meaningful opportunity to inspect and controvert contents of presentence report). The right of access of an individual directly affected by the document, the defendant, does not establish that the document has historically been "open to the public." *United States v. Dorfman*, 690 F.2d at 1234.

Further, as we discuss below in some detail, public disclosure of the contents of the presentence report would not promote the effective functioning of the probation office, or, by extension, the sentencing court; rather, disclosure would constitute a positive hindrance to the probation office's performance of its obligation to provide the sentencing court with a comprehensive analysis of the defendant's character. For these reasons, we do not believe that a first amendment right of access attaches to presentence reports.

### III.

Under either the common law or the first amendment, the question of public access to presentence reports is resolved by examining the considerations which support the confidentiality of these reports. Three general factors justify the secrecy of presentence reports: (1) the privacy interests

F.2d 497, 502 (1st Cir.1989); *In re Search Warrant for Secretarial Area*, 855 F.2d 569, 573 (8th Cir.1988); *United States v. Haller*, 837 F.2d 84, 87 (2d Cir.1988); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir.1986).

**4.** Other courts have apparently held that if the press has a right to attend a given judicial proceeding, it thereby acquires the conditional right to inspect documents filed in connection with the hearing. *See, e.g., United States v. Gerena*, 869 F.2d 82, 85 (2d Cir.1989); *Seattle Times Co. v. United States Dist. Court*, 845 F.2d 1513, 1516–17 (9th Cir.1988); *United States v. Haller*, 837 F.2d 84, 86–87 (2d Cir.1988); *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir.1987); *In re Washington Post Co.*, 807 F.2d 383, 389–90 (4th Cir.1986); *Associated Press v. United States Dist. Court*, 705 F.2d 1143, 1145 (9th Cir.1983). Under this approach, it would appear that presentence reports would be presumptively open to the public, if sentencing *hearings* are public; the sentencing court could only refuse to disclose the report where, in the individual case, the court made "specific, on the record findings" of a "compelling need" for sealing. By contrast, under our approach, whereby presentence reports are considered, in effect, an independent "proceeding", we may consider the press' right of access to presentence reports *as an independent class of documents*, and not merely as applied to a particular report. Given the characteristics which all presentence reports share, which we believe justify their presumptive secrecy, our "class-wide" approach obviates the need for repeated adjudications of the press' right of access to these documents. *Compare The Times Mirror Co. v. The Copley Press, Inc.*, 873 F.2d 1210, 1217 n. 7 (9th Cir.1989) (blanket holding that public has no right of access to search warrant application materials prior to return of indictments "relieves the government of the considerable burden of responding on a case-by-case basis to actions such as [the present]") *with In re Search Warrant for Secretarial Area*, 855 F.2d 569, 574 (8th Cir.1988) (government must show, in each case, that pre-indictment sealing of search warrant application materials "narrowly tailored" to further a "compelling governmental interest").

of the defendant, the defendant's family and the crime victim; (2) the interest of the court in full disclosure of information relevant to sentencing; and (3) the interest of the government in the secrecy of information related to ongoing criminal investigations, and information derived from grand jury proceedings. We consider these factors in turn.

## A.

### Privacy Interests of the Defendant and Others

The criminal defendant has a strong interest in maintaining the confidentiality of his or her presentence report. Sentencing proceedings, and particularly the presentence investigation, often involve a broad-ranging inquiry into a defendant's private life, not limited by traditional rules of evidence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The district judge may consider the defendant's family history, mental and physical health, financial situation and other personality traits affecting the defendant's social adjustment.[5] A sentencing judge may also consider allegations (even if supported only by hearsay or illegally obtained evidence) that the defendant has committed other, uncharged crimes; the court may even consider prior acquittals, or crimes committed by the defendant as a juvenile, for limited purposes.[6]

The contents of the presentence report reflect the breadth of information on which the sentencing court may rely. Rule 32(c)(2)(A) provides generally that the pre-sentence report "shall contain" "information about the history and characteristics of the defendant, including his prior criminal record, if any, his financial condition, and any circumstances affecting his behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant." A monograph prepared by the Probation Division of the Administrative Office of the United States Courts provides a more expansive discussion of the goals of the presentence report.

The presentence report describes the defendant's character and personality, evaluates his or her problems, helps the reader understand the world in which the defendant lives, reveals the nature of his or her relationships with people, and discloses those factors that underlie the defendant's specific offense and conduct in general.

*The Presentence Investigation Report* 1 (2d ed. 1984). To fulfill this function, the presentence report should contain: a listing of juvenile adjudications involving the defendant (which is normally confidential under state law); allegations concerning the defendant's involvement in other, uncharged offenses; the defendant's physical and mental health (including the defendant's I.Q., results of psychiatric tests, history of substance abuse problems and any "[u]nusual fears, hostilities, obsessions, compulsions, depressions, or sexual deviations"); any history of child abuse or neglect; details of the defendant's relationship with his or her spouse or "significant other"; and a detailed accounting of the defendant's financial condition. *Id.* at 10–16. The monograph also provides that the presentence report should contain information about the defendant's family, including

---

5. *See, e.g., Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (sentencing judge's consideration of presentence report containing wide range of information concerning defendant's personal life and past criminal behavior does not deny due process, even though defendant not allowed to examine report or challenge its contents).

6. *See United States v. Agyemang,* 876 F.2d 1264, 1271–72 (7th Cir.1989) (approving sentencing court's extensive reliance on hearsay); *United States v. Nowicki,* 870 F.2d 405, 406–07 (7th Cir.1989) (sentencing court may consider allegation, even if based on hearsay, that defendant threatened co-defendant or witness); *United States v. Gardner,* 860 F.2d 1391, 1399 (7th Cir. 1988); *United States v. Perez,* 858 F.2d 1272, 1275, 1277–78 (7th Cir.1988).

any "[h]istory of emotional disorders, diseases, and criminal behavior." *Id.* at 13.[7]

Criminal Rule 32(c)(3) allows the defendant to challenge the accuracy of factual statements contained in the presentence report. *See generally United States v. Brown,* 870 F.2d 1354, 1360–1363 (7th Cir. 1989); *United States v. Perez,* 858 F.2d 1272, 1276–77 (7th Cir.1988); *United States v. Eschweiler,* 782 F.2d 1385, 1387–91 (7th Cir.1986); *United States v. Rone,* 743 F.2d 1169, 1171–76 (7th Cir.1984). However, under Rule 32(c)(3)(D), the sentencing court need not make a finding as to all matters which the defendant contests. Instead, the court may simply disregard contested facts, in which case the challenged statements remain in the report, and, at least to some extent, may be relied upon by the Parole Commission in making release decisions. *Levesque v. Brennan,* 864 F.2d 515, 518–20 (7th Cir.1988). Further, the defendant does not have the right to challenge "evaluations", as opposed to "facts", contained in the report; thus, some of the most subjective, and potentially embarrassing or inflammatory, material in the report is immune to challenge. *United States v. Manso–Portes,* 867 F.2d 422, 428 (7th Cir. 1989) (defendant may not challenge statement that he had "managerial position" in drug conspiracy); *cf. United States v. Atehortua,* 875 F.2d 149, 151 (7th Cir.1989).

Even if the district court accepts the defendant's version of disputed facts, the inaccurate material is not excised from the report; instead, the district court's contrary finding is simply attached to the report as an appendix. Thus, there is a strong possibility that the report will contain material which is untrustworthy or simply incorrect, or which the defendant has not been given a full opportunity to rebut. *See* Fennell & Hall, *supra* note 7, at 1628–30 (documenting instances of inaccuracies and "subtle distortions" in presentence reports). This consideration, together with the certainty that the report will contain much highly personal, though accurate, information, counsels against disclosure of presentence reports to third parties, especially where the defendant objects.

The concern that the presentence report may contain minimally substantiated and unchallenged allegations of the defendant's involvement in other, uncharged crimes is identical to one of the central considerations underlying the general rule of grand jury secrecy.[8] Courts have recognized that the target of a grand jury investigation has an interest in preventing the disclosure of allegations of criminality which he or she has had no opportunity to rebut, and which may be based on nothing more than rumor or speculation.[9] The Supreme Court has

---

**7.** *See also Gregg v. United States,* 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1967) (noting that "[t]here are no formal limitations on the [ ] contents [of presentence reports], and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged"); Model Penal Code § 7.07(3) (presentence report should contain, *inter alia,* "the defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation and personal habits"); Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613, 1623–26 (1980).

**8.** As the references to the treatment of grand jury materials throughout this opinion indicate, we believe that presentence reports should generally remain confidential for the same reasons supporting grand jury secrecy. *United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1175 (2d Cir.1983) (noting that "the presentence report [ ] bear[s] many of the characteristics—and frailties—of material presented to a grand jury").

For a discussion of the factors underlying the general rule of grand jury secrecy, see *United States v. John Doe, Inc. I,* 481 U.S. 102, 109 n. 5, 107 S.Ct. 1656, 1661, 95 L.Ed.2d 94 (1987); *United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983); *Illinois v. Abbott & Assocs., Inc.,* 460 U.S. 557, 564 n. 8, 566–67 n. 11, 103 S.Ct. 1356, 1359 n. 8, 1360–61 n. 11, 75 L.Ed.2d 281 (1983); *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–86 n. 6, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir.1954)); *Hernly v. United States,* 832 F.2d 980, 983–84 (7th Cir.1987); *Lucas v. Turner,* 725 F.2d 1095, 1099–1100 (7th Cir.1984).

**9.** *See, e.g., United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983) ("Grand jury secrecy [ ] is 'as important for the protection of the innocent as for the pursuit of the guilty.'") (citation omitted); *United States v. Fischbach & Moore, Inc.,* 776 F.2d

recognized the privacy interest of uncharged or acquitted targets, and has suggested that the secrecy of grand jury materials is a significant factor mitigating any concern about the procedural informality of grand jury proceedings themselves. *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 566–67 n. 11, 103 S.Ct. 1356, 1360–61 n. 11, 75 L.Ed.2d 281 (1983) ("grand jury secrecy has traditionally been invoked to justify the limited procedural safeguards available to witnesses and persons under investigation"). Similarly, presentence investigation reports are not constrained by rules of evidence or procedure, and may include allegations that the defendant has committed other offenses. The defendant is given only a limited opportunity to rebut the factual allegations contained in the report. If these reports were routinely made available to the public, such a practice would raise serious questions about the fairness of imputing criminal culpability to a defendant (and disclosing highly personal information) without the procedural safeguards attendant to a criminal trial.

Rule 32(c)(2)(D) also provides that the presentence report should contain a statement assessing "the financial, social, psychological, and medical impact" of the crime on its victims. Thus, quite apart from information about the defendant, the presentence report may also contain personal information concerning the crime victim's physical, emotional and financial injuries. *See The Presentence Investigation Report* 10 (including, in sample victim impact statement, fact that victim suffers from "anxiety attacks," needs psychiatric counseling, and is in precarious financial condition). The wide dissemination of this information would discourage participation by victims in the sentencing process, thus frustrating an important goal of Rule 32.

## B.

### *Possible Adverse Effects of Disclosure on the Free Flow of Information to the Sentencing Judge*

The sentencing court has a substantial interest in insuring that all information relevant to the sentencing decision is made available to the court. The Supreme Court recognized forty years ago that "conscientious judges" seek "to sentence persons on the best available information rather than on guesswork and inadequate information." *Williams v. New York*, 337 U.S. 241, 249, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949). The Court accepted, as an obvious proposition, that "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." *Id.* at 250, 69 S.Ct. at 1084.

Lower courts addressing third parties' requests for access to presentence reports have relied upon the Supreme Court's basic insight that publication of the contents of a presentence report would tend to discourage full disclosure to the sentencing judge. In *United States v. Greathouse*, 484 F.2d 805, 807 (7th Cir.1973), this court recognized that "requiring disclosure of a presentence report is contrary to the public interest as it would adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused and from sources independent of the accused for use in the sentencing process." *See also United States v. Anderson*, 724 F.2d 596, 598 (7th Cir.1984); *United States v.*

839, 844 (9th Cir.1985); *Lucas v. Turner*, 725 F.2d 1095, 1100, 1107 (7th Cir.1984); *In re Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894, 895–96 (7th Cir.1973) (noting, as factors justifying grand jury secrecy, "the interest of a witness against disclosure of others' testimony which he has had no opportunity to cross-examine or rebut" and "the interest of those unfavorably mentioned in prosecutors' questions or witnesses' answers"); *In re Petition to Inspect and Copy Grand Jury Materials*, 576 F.Supp. 1275, 1281 (S.D.Fla.1983), *aff'd*, 735

F.2d 1261 (11th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984); *cf. The Times Mirror Co. v. The Copley Press, Inc.*, 873 F.2d 1210, 1216–1218 (9th Cir.1989) (refusing to disclose affidavits submitted in connection with search warrant applications, due in large part to privacy and reputational interests of as-yet-unindicted persons named in affidavits); *United States v. Smith*, 776 F.2d 1104, 1113–14 (3d Cir.1985) (refusing to release portion of bill of particulars containing names of unindicted co-conspirators).

*Cyphers,* 553 F.2d 1064, 1069 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977).[10]

In *United States v. Schlette,* 842 F.2d 1574, 1580 (1988), the Ninth Circuit recently rejected the argument that the flow of information to the sentencing judge would be curtailed if presentence reports were more widely disseminated. The court based its analysis on an empirical study of the effect of disclosure *to the defendant* on the information received through the presentence report, and on "common sense": "Because Rule 32(c) mandates disclosure of significant portions of the presentence report to the defendant, ... '[i]f any chilling of sources were to occur, this disclosure would certainly trigger it.'" *Id.* (citation omitted). We cannot fully accept the Ninth Circuit's reasoning, whether based on empirics or "common sense."

With regard to *Schlette*'s "common sense" finding that the prospect of disclosure of the presentence report to the defendant is the only factor which might discourage potential witnesses, we simply disagree. Certainly, persons questioned about the defendant's character might be more forthcoming if they could be assured that the defendant would not have access to their comments. However, simply because an individual is willing to speak, knowing his or her comments will be disclosed to the defendant, does not indicate that the witness is willing to have those comments broadcast to the public at large. *See United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1174–75 (2d Cir.1983); *Hancock Bros., Inc. v. Jones,* 293 F.Supp. 1229, 1234 (N.D.Cal.1968) ("Reprisal by the defendant is only one event to guard

against in promoting free and untrammeled disclosures by persons who have information necessary for sentencing or grand jury purposes.").[11] Moreover, the desire to avoid being publicly associated with a convicted criminal (by supplying information for the presentence report) might apply equally to individuals who have favorable impressions of the defendant as well as to individuals who possess adverse information. It is in the best interests of the defendant, and society at large, that this information be disclosed to the court before sentence is imposed.

*Schlette*'s intuition that broader disclosure would not affect the information received by the sentencing court also ignores the most important source of presentence information: the defendant. The Administrative Office's manual for probation officers provides that the defendant should be interviewed at least twice, with one interview in the defendant's home, in order "to establish a cooperative relationship and to give the defendant confidence in the probation officer." *The Presentence Investigation Report* 3. The manual stresses that the presentence investigation can be an important first step in the rehabilitation of the defendant.

> During the presentence investigation the defendant may be amenable to personal change. The investigation may have both a salutary and traumatic effect on the defendant. The crisis of the situation often brings about a reevaluation of the offender's personal situation. Thus, it is an excellent time to develop a positive atmosphere for the subsequent supervisory relationship.

---

**10.** This "free flow of information" rationale has been accepted as a factor favoring nondisclosure by other courts considering this issue. *United States v. McKnight,* 771 F.2d 388, 390 (8th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1171 (2d Cir.1983); *United States v. Martinello,* 556 F.2d 1215, 1216 (5th Cir.1977) (per curiam); *United States v. Dingle,* 546 F.2d 1378, 1381 (10th Cir. 1976); *United States v. Boesky,* 674 F.Supp. 1128, 1130 (S.D.N.Y.1987); *Hancock Bros., Inc. v. Jones,* 293 F.Supp. 1229, 1232 (N.D.Cal.1968).

**11.** Similarly, even where a witness' grand jury testimony has been disclosed to the criminal defendant or grand jury target, courts have still found that the individual witness retains an interest in preventing the wholesale disclosure of that testimony to third parties. *See, e.g., Illinois v. Sarbaugh,* 552 F.2d 768, 775 (7th Cir.), *cert. denied sub nom. J.L. Simmons, Inc. v. Illinois,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977).

*Id.* at 4.[12] Certainly, the defendant will not be deterred from speaking sincerely and forthrightly by the disclosure regime of Rule 32. However, the defendant might be reluctant to disclose details of his or her private life due to the possibility that the contents of the presentence report might one day end up in a newspaper. The defendant should not be denied the opportunity to participate fully in the important rehabilitative process of the presentence investigation because of the risk that intimate details of his or her personal life may eventually be published. Nor should the sentencing court be denied this highly relevant information, which may provide greater insight into the defendant's character than all other sources of presentence information combined.

*Schlette* 's empirical analysis is not sufficient to overcome our belief that broader disclosure of presentence reports would tend to reduce the information available to the sentencing court. *Schlette* relied exclusively on a single study prepared for the Federal Judicial Center as support for its empirical analysis. The main focus of this study, (published as Fennell and Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613 (1980)), was on the effects of disclosure *to the defendant* on the quality and quantity of presentence information received by the court; it concluded that defense access to the presentence report had not had an appreciable effect on the "free flow of information" to the sentencing judge. However, the report noted that "third-party disclosure may adversely affect the court's ability to obtain information," *id.* at 1684, and included in its recommendations a suggestion that "the district courts should restrict noncorrectional parties' access to the presentence report." *Id.* at 1696. We fail to see how this study supports the Ninth Circuit's conclusion that third-party access to the presentence report would not adversely affect the information received by the sentencing court.

More generally, we reject *Schlette's* analytical approach, which focuses narrowly on the risks of disclosure of a *particular* presentence report. We believe that a district court faced with a request for access to a presentence report should take a broader view, and examine the potential effects of disclosure on future presentence investigations. In a related area, the Supreme Court has stressed that a district judge ruling on a petition for disclosure of grand jury materials must consider the possible "systemic effects" of disclosure on future grand juries before releasing grand jury materials in any particular case.

[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979).[13] A district judge

---

**12.** *See also id.* at 10 (defendant's version of the offense may be especially helpful to a full understanding of defendant's character and motivations); Fennell & Hall, *supra* note 7, at 1623–25 & n. 51 (confronting defendant with apparently false statements from earlier interviews may provide valuable insights into defendant's character and extent of remorse).

**13.** *See also, e.g., Illinois v. Abbott & Assocs., Inc.,* 460 U.S. 557, 566 n. 11, 103 S.Ct. 1356, 1361 n. 11, 75 L.Ed.2d 281 (1983); *United States v. Alexander,* 860 F.2d 508, 514 (2d Cir.1988); *In re Request for Access to Grand Jury Materials (Has-*

*tings),* 833 F.2d 1438, 1441 (11th Cir.1987); *Hernly v. United States,* 832 F.2d 980, 984 (7th Cir.1987); *United States v. Fischbach & Moore, Inc.,* 776 F.2d 839, 844 (9th Cir.1985) ("The broader societal interest in protecting grand jury secrecy remains, even though disclosure to one party [in a civil lawsuit] may have defeated the secrecy interests of a particular witness or the party accused before the grand jury."); *Lucas v. Turner,* 725 F.2d 1095, 1101, 1107–08 (7th Cir.1984); *State of Illinois v. Sarbaugh,* 552 F.2d 768, 775 (7th Cir.), *cert. denied sub nom. J.L.*

should follow a similar approach when ruling on a request for disclosure of a presentence report, and ask whether disclosure would have untoward effects on the gathering of information in future presentence investigations.

## C.

*Government's Interest in Preventing Disclosure of Grand Jury Materials, and Information Which May Compromise Ongoing Criminal Investigations*

The government also has an interest in preventing the disclosure of presentence reports. The presentence report will often contain information regarding the defendant's past or future cooperation with the government. The report may also include information conveyed by informants or co-operating codefendants regarding the defendant's relative culpability for the offense for which he has been convicted, and the defendant's involvement in other crimes which may be under investigation. Especially where the defendant was a member of an organized, ongoing criminal enterprise, disclosure may pose a substantial risk to the safety of government informants, even though the defendant is incarcerated. And disclosure of the defendant's cooperation with the government may increase the risk of retaliation against the defendant, both during his or her imprisonment, and upon release. Therefore widespread disclosure of the presentence report may obstruct the government's ability to investigate crimes. *See United States v. Boesky*, 674 F.Supp. 1128, 1129–30 (S.D.N.Y.1987) (fact that presentence report would reveal defendant's involvement in ongoing criminal investigation justifies nondisclosure).[14]

The presentence report may also contain information derived from grand jury materials. Grand jury proceedings are protect-

*Simmons, Inc. v. Illinois*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977).

**14.** Courts upholding the secrecy of grand jury materials have also noted the government's paramount interest in preventing the release of information which may reveal the direction and progress of ongoing criminal investigations.

ed under a separate, related rule of secrecy, and their indirect disclosure through the wide dissemination of presentence reports would be unacceptable. In a recent decision, the Second Circuit approved the district court's consideration of grand jury materials in sentencing, but found that the court had erred by permitting public disclosure of the materials; the court suggested that the grand jury materials should have been filed under seal, "parallel[ing] the treatment given to presentence reports." *United States v. Alexander*, 860 F.2d 508, 513–14 (2d Cir.1988).

## D.

*Relevance of Mandatory Disclosure to the Defendant Under Rule 32 of the Federal Rules of Criminal Procedure*

The district court relied on "th[e] gradual relaxation of Rule 32's restraints on disclosure" to support its conclusion that the "tradition of confidentiality, without more, does not justify withholding presentence reports." We cannot agree that the amendments to Rule 32 have any significant bearing on the issue of third-party access to presentence reports.

As the American Bar Association has noted, "[n]o issue in the law of sentencing has attracted the same sustained attention and controversy as that of the defendant's asserted right to disclosure of the presentence report." *Standards for Criminal Justice* Standard 18–5.4, commentary at 18–364 to –365 (2d ed. 1980). Initially, Rule 32 was silent as to the defendant's right to inspect the presentence report; subsequently, the rule authorized the district court to release the report upon request; finally, the rule was amended in 1983 to *require* disclosure to the defendant, request or no. *See generally, United States Dep't of Justice v. Julian*, 486 U.S. 1, 108 S.Ct. 1606, 1611–12, 100 L.Ed.2d 1 (1988)

*See generally* cases cited *supra* note 8. *See also The Times Mirror Co. v. The Copley Press, Inc.*, 873 F.2d 1210, 1215–17 (9th Cir.1989) (pre-indictment release of affidavits supporting issuance of search warrants may jeopardize ongoing investigation, and therefore disclosure inappropriate).

(outlining history of, and reasons for, successive amendments of Rule 32). Throughout the debate the central issue was one of fairness to the defendant: if the defendant had the right to an open proceeding, to the assistance of counsel and to confront his accusers in the guilt phase of a criminal trial, how could a sentencing proceeding be conducted, in effect, "behind [the defendant's] back"? Model Penal Code § 7.07, commentary at 292–93 n. 16 (revised ed. 1985) (quoting comments of Judge John J. Parker during ALI debates on model code). Based on these concerns, and in order to insure the factual accuracy of the presentence report, the Federal Rules of Criminal Procedure were gradually modified to guarantee the defendant a meaningful opportunity to inspect and challenge the contents of the report.

However, while the bonds of secrecy surrounding the presentence report were loosened to permit defense access, the framers of the Federal Rules remained sensitive to the concerns of law enforcement officials that unlimited access to the report might discourage full disclosure of relevant information to the sentencing judge, and might jeopardize ongoing criminal investigations. Thus, unless the district court directs otherwise, Rule 32(c)(3)(E) requires that "copies of the presentence investigation report made available to the defendant ... shall be returned to the probation officer immediately following the imposition of sentence." The Advisory Committee Notes to the 1974 amendment of Rule 32 make clear that this return requirement is meant "to insure that [presentence reports] do not become available to unauthorized persons. 'Such reports shall be part of the record but shall be sealed and opened only on order of the court.'" 62 F.R.D. 271, 325 (citation omitted); *see also United States Dep't of Justice v. Julian*, 108 S.Ct. at 1615 (Scalia, J., dissenting) (quoting letter of Chief of Probation Division, indicating that main concern with defendant's retention of presentence report is that "there would be no way of effectively prohibiting further disclosure of the information to third parties"). As the government correctly notes in its brief, acceptance of Pu-

litzer's argument that the presentence report should be disclosed to the press routinely would eviscerate Rule 32's careful specification of the chain of custody of the report.

Despite the amendments to Rule 32 mandating disclosure to the defendant in all cases, the Probation Division of the Administrative Office of the United States Courts continues to take the position that the presentence report is a confidential document, which should be disclosed only to correctional authorities. *The Presentence Investigation Report* 2. The Administrative Office also recommends that the probation officer obtain the defendant's written consent prior to any third-party disclosure. *Id.* at 3.

Similarly, the ABA's *Standards for Criminal Justice*, while mandating disclosure of the presentence report to the defendant based on considerations of "[f]undamental fairness," Standard 18–5.4(a), also state quite emphatically that the report should not be disclosed to third parties, except the sentencing and appellate courts, and persons having a "legitimate professional interest" in the report's contents. Standard 18–5.3. The commentary notes:

[T]hese standards take the position that the presentence report should not be a matter of public record. No legitimate interests are served by public disclosure. The incentive both for the offender and for sources close to the offender to cooperate candidly in the presentence investigation might be lessened if they knew that their statements could become part of the public record. Alternatively, the desire to protect sources from harassment and revenge might lead to the preparation of presentence reports that fail to convey candidly the information gathered.... In turn, such evasive phrasings might also make effective rebuttal of the report impossible. Finally, the offender has a continuing right to privacy in matters in his or her life and background that are not connected with the offense for which the offender stands convicted. An obvious social interest exists in minimizing unnecessary stigmati-

zation of the offender, since any failure to facilitate the eventual reentry of offenders into society is in turn a likely cause of recidivism.

*Id.* at 18–362.

The successive amendments of Rule 32, culminating in an extremely broad right of access for defendants, are based on compelling considerations of fairness to the person most directly affected by the contents of the presentence report—the defendant. These considerations have no relevance to third-party requests for access. In fact, to the limited extent that the procedures for defense access have any bearing on the present inquiry, they would suggest that third-party access to a presentence report should be an infrequent occurrence.

### IV.

*Showing Required to Justify Disclosure of Presentence Report*

The considerations discussed above demonstrate that, as a general matter, public disclosure of the contents of presentence reports would interfere with the proper functioning of the probation office and the sentencing court. The presentence investigation is a process whereby the defendant, and others with knowledge of the defendant, engage in a critical evaluation of the defendant's entire persona: his or her family relationships, religious and ethical views, past proven or suspected criminal activity, emotional and sexual attitudes, and a wide range of other matters. The ultimate goal of the investigation is not to prove any specific act, but instead to understand the motivating forces underlying the defen-

dant's conduct. Given the wide-ranging nature and purpose of the inquiry, and the relaxed evidentiary standards governing it, the presentence investigation is more closely akin in degree of intimacy to psychiatric or spiritual counseling than to the public, adversarial cast of the trial of the guilt phase of a criminal proceeding.

In order to find that a document is subject to a right of access under the first amendment, the court must consider whether the document has historically been available to the public, and whether public access would promote the proper functioning of the government agency producing or considering the document. Presentence reports have not generally been available to the public, and publicity would not help to insure that the presentence investigation is properly conducted. We therefore hold that there is no first amendment right of access to presentence reports.[15]

■ Our analysis under the common law right of access is somewhat different. Since the presentence report is undoubtedly in the district court's possession, the common law right of access attaches to this document. However, the important question is what kind of showing will be sufficient to warrant disclosure of the contents of the report to a third party. Relying on the Ninth Circuit's decision in *Schlette*, the district court held that disclosure was appropriate where the newspaper had made a "threshold showing that disclosure will serve the ends of justice"; once such a showing was made, the parties opposing disclosure were required to show, with

**15.** Several courts have similarly held that the first amendment right of access does not comprehend grand jury proceedings, since grand juries have traditionally conducted their investigations in closed hearings, and secrecy is necessary in order for the grand jury to carry out its investigative function. *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 9, 106 S.Ct. 2735, 2741, 92 L.Ed.2d 1 (1986) (dictum; "there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'") (citation omitted); *Globe Newspaper Co. v. Pokaski,* 868 F.2d 497, 509–10 (1st Cir.1989); *In re Subpoena* to Testify before Grand Jury (University of Florida Athletic Program), 864 F.2d 1559, 1562–63 (11th Cir.1989); *Application of Storer Communications, Inc.,* 828 F.2d 330, 336 (6th Cir.1987). Other courts, without specifically mentioning the first amendment, have also denied the press access to grand jury materials. *In re Donovan,* 801 F.2d 409 (D.C.Cir.1986); *In re Petition to Inspect & Copy Grand Jury Materials,* 576 F.Supp. 1275, 1289 (S.D.Fla.1983) ("The petition [for access] seeks wholesale public disclosure that is wholly inconsistent with the settled rules preserving the secrecy of matters occurring before the grand jury."), *aff'd,* 735 F.2d 1261 (11th Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984).

specificity, a "competing interest" which supported the continued confidentiality of the report. The court found that Pulitzer had made a sufficient "threshold showing," since it had asserted "a public interest in keeping watch over official misconduct." The court also found that the government had not sufficiently rebutted this showing, since its reliance on the "traditional confidentiality of presentence reports" was nothing more than a "conjectural statement." We cannot agree with the district court's analysis, which essentially places the burden on the government to make a particularized showing that disclosure is unwarranted, preceded only by the most generalized showing of "need" by the news organization seeking access to the report. Instead, we believe that the news organization seeking access to a presentence report must make a substantial, and specific, showing of need for disclosure before a district court may allow public inspection of the report.

In *United States Department of Justice v. Julian*, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988), the Supreme Court considered whether a presentence report is privileged from disclosure to the subject of the report under the Freedom of Information Act, 5 U.S.C. section 552(b)(5). The Court noted that lower courts have generally refused third-party requests for access to the presentence report, even when such requests are made in the context of ongoing civil or criminal litigation.

[I]n both civil and criminal cases the courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for some other individual or individuals. As the Government points out, one reason for this is the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report. A second reason is the need to protect the confidentiality of the information contained in the report. Accordingly, the courts have typically required some showing of special need before they will allow a third party to obtain a copy of the presentence report. See, *e.g., Charmer, supra,* at 1174–1176 (following *Hancock Brothers, Inc. v. Jones, supra,* in concluding that a report may not be disclosed "in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice").

*Id.* at 1613 (emphasis in original; other citations omitted).

*Julian* does not, of its own force, control the result in this case. The Supreme Court's discussion of third-party requests for access was not strictly necessary to the decision in that case, since, whatever the rights of third parties to a presentence report, the question before the Court involved the rights of the *subject* of the report under the Freedom of Information Act. However, while not binding, the Supreme Court's discussion carries substantial weight, especially since it is consistent with the holdings of this circuit and every other circuit (except perhaps the Ninth Circuit in *Schlette* ) to consider the issue.

 This court has previously addressed third-party requests for access to presentence reports in cases where criminal defendants sought disclosure of the presentence reports of prosecution witnesses. In these cases, where the third party sought access for use in a judicial proceeding in which the requester's liberty was at stake, this court held that disclosure is only appropriate where "absolutely essential to effective presentation of a defense and therefore required in the interests of justice." *United States v. Cyphers*, 553 F.2d 1064, 1069 (7th Cir.), *cert. denied*, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977).[16] This standard, which should be applied in similar fashion to the standard for disclosure of

16. See also *United States v. Anderson*, 724 F.2d 596, 597 (7th Cir.1984); *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1176 (2d Cir.1983) ("the court should not release a presentence report to a third person unless that person has shown a compelling need for disclosure to meet the ends of justice"); *United States v. Figurski*, 545 F.2d 389, 391 (4th Cir.1976); *Hancock Bros., Inc. v. Jones*, 293 F.Supp. 1229, 1233 (N.D.Cal. 1968) ("a presentence report should not be disclosed to third parties unless lifting confidentiality is required to meet ends of justice").

grand jury materials,[17] will ordinarily only be met in situations in which a party to litigation requires access to a presentence report in order to impeach a witness, or to establish an affirmative proposition.[18] However, even where potential relevance to ongoing litigation has been shown, the court must carefully examine the presentence report *in camera* in order to determine whether refusing to disclose the material may lead to an unjust result. Only where a compelling, particularized need for disclosure is shown should the district court disclose the report; even then, however, the court should limit disclosure to those portions of the report which are directly relevant to the demonstrated need. Further, throughout this inquiry the court must be sensitive not only to the interests in confidentiality of the particular report, but also to the possible future effects of disclosure in any particular case.[19]

Although decided under what we believe to be an incorrect legal standard, the request for access in *Schlette* may well have satisfied the standard which we have outlined. In *Schlette*, a convicted defendant who had been released on probation by a federal court murdered an attorney who had prosecuted the defendant for a prior offense. The attorney's estate sought access to the presentence report in order to determine whether the probation office may have been liable under a tort theory for failing to recognize the danger posed by release of the defendant. In these circumstances, the information sought could not be obtained elsewhere—for the crucial issue was whether the Probation Office *knew* information which should have alerted it to the risks of releasing the defendant on probation. And, since the defendant had committed suicide, the privacy interests of the subject of the report, which might normally counsel against disclosure, were also substantially diminished. In this situation, a compelling need for disclosure may well have been demonstrated.

■ Under the standard we have outlined, there will probably be some situations in which a presentence report or a portion of such a report may be disclosed

**17.** The party seeking disclosure of grand jury materials must show a "compelling necessity" or "particularized need" for the grand jury materials; where an appropriate showing has been made, the district court must take care to disclose materials "discretely and limitedly." *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675; *Procter & Gamble,* 356 U.S. at 682–83, 78 S.Ct. at 986–87. Disclosure is not justified simply because access to grand jury materials would save a civil litigant substantial amounts of time and money; the "convenience" of litigants is not a sufficient consideration to support disclosure. *See, e.g., Hernly v. United States,* 832 F.2d 980, 984 (7th Cir.1987) ("relevancy and usefulness to another case [are] not enough to require disclosure of grand jury materials"); *Cullen v. Margiotta,* 811 F.2d 698, 715 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Lucas v. Turner,* 725 F.2d 1095 (7th Cir.1984).

**18.** Rule 6(e) of the Federal Rules of Criminal Procedure provides that grand jury materials may only be disclosed to third parties "when so directed by a court preliminarily to or in connection with a judicial proceeding." Fed.R. Crim.P. 6(e)(3)(C)(i). The limitation to requests made in connection with a judicial proceeding emphasizes the fact that disclosure should be allowed only in limited situations. *See generally United States v. Baggot,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983) (IRS investigation to determine individual's tax liability is not "preliminar[y] to or in connection with a judi-

cial proceeding"). One court of appeals has suggested that Rule 6(e) does not limit the "inherent authority" of the district court to order disclosure in other "exceptional circumstances." *See In re Petition to Inspect & Copy Grand Jury Materials (Hastings),* 735 F.2d 1261, 1269 (11th Cir.) (approving disclosure to judicial panel investigating possible misconduct by federal judge, even though investigation not a "judicial proceeding" under Rule 6(e)), *cert. denied,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984). Whatever the merits of this decision, it is clear that disclosure of grand jury materials in situations not governed by Rule 6(e) should be an uncommon occurrence.

**19.** Where disclosure of even limited portions of the presentence report is authorized, the district court should specify in detail the procedures for disclosure, to insure that the report is no more widely disseminated than absolutely necessary. *Cf. Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed. 2d 156 (1979) ("if disclosure [of grand jury materials] is ordered, the court may include protective limitations on the use of the disclosed material"); *State of Illinois v. Sarbaugh,* 552 F.2d 768, 777 (7th Cir.) (detailing restrictive conditions imposed on party granted access to grand jury materials), *cert. denied sub nom. J.L. Simmons, Inc. v. Illinois,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977).

to meet a particularized need arising out of pending or contemplated litigation. In the present case, Corbitt's presentence report is not sought for litigation purposes, but instead by the news media for publication. Obviously, there may be a public interest in disseminating some information underlying the sentencing of a public figure for crimes related to his public office. We do not by any means foreclose the possibility that the press may be able to show a "compelling need" with sufficient specificity to merit disclosure of a presentence report in whole or in part. But a particularized purpose sufficient to establish a compelling need is the key to press disclosure just as it is in connection with disclosure for litigation purposes. The facts of the *Schlette* case may provide a useful illustration. In *Schlette*, not only did the deceased attorney's estate seek access to the presentence report, but the press also sought disclosure of the contents of the report. In the circumstances presented in *Schlette*, the public might indeed have had a "compelling need" to learn the factors which affected the decision to release an individual bent on revenge, who ultimately carried out his previously expressed intention. We emphasize that the public's particularized interest in the sentencing decision in *Schlette* is of a different order than the generalized public interest present in *every* criminal case (including those involving public officials), to evaluate the district court's sentencing decision. The latter general interest in the functioning of the sentencing court is ordinarily insufficient to justify disclosure; the public must generally be satisfied with the

information, often (as here) quite extensive, disclosed during an open sentencing hearing or otherwise obtainable from sources available to the press.[20] However, we do not undertake to decide where the present case falls in the spectrum between the facts of *Schlette* and the routine criminal sentencing. The determination whether disclosure to the press is warranted is properly left to the district court in the first instance, applying the "compelling, particularized need" standard discussed above. This case will be vacated and remanded for that purpose.

The judgment of the district court is

VACATED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

---

**20.** Besides attending the sentencing hearing, the press and public may also be able to glean information regarding the defendant's conviction and sentencing from other, non-confidential documents submitted in connection with sentencing (such as the testimonial letters disclosed here), and from interviews with the defendant and the attorneys for prosecution and defense. Moreover, the press and public may also obtain information regarding the criminal acts for which a defendant has been convicted by attending the criminal trial itself or the hearing at which the court accepts a defendant's plea of guilty. In the latter circumstance, Federal Rules of Criminal Procedure 11(c)(1) and (f) require that the district court assure itself that the defendant understands "the nature of the charge" and that there is "a factual basis for the

[guilty] plea." *See McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed. 2d 418 (1969); *Ranke v. United States,* 873 F.2d 1033, 1036–1038 (7th Cir.1989) (applying Rule 11 requirements to acceptance of nolo contendere plea); *Nevarez–Diaz v. United States,* 870 F.2d 417, 420–22 (7th Cir.1989); *United States v. Fountain,* 777 F.2d 351, 354–57 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). Therefore, the public and press will have access to a full airing of the facts underlying a conviction, whether the defendant is convicted after trial or by guilty plea. We note that the press ordinarily will have a far more legitimate interest in the circumstances surrounding the specific offense for which the defendant stands convicted than in the other matters discussed in the presentence report.