**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raul GOMEZ, Defendant–Appellant.**

**No. 02–11116.**

United States Court of Appeals,
Eleventh Circuit.

March 12, 2003.

Roy E. Black, Black, Srebnick & Kornspan, Miami, FL, for Defendant–Appellant.

Dawn Bowen, Anne R. Schultz, Carol E. Herman, Miami, FL, for Plaintiff–Appellee.

Before EDMONDSON, Chief Judge, ANDERSON, Circuit Judge, and POGUE *, Judge.

PER CURIAM:

This case involves the disclosure of a federal presentence investigation report (PSI) to state prosecutors. We affirm.

## BACKGROUND

In March 2000, Raul Gomez was federally indicted for conspiracy to commit Medicare Fraud, mail fraud, and money laundering. Gomez pleaded guilty to two counts of the indictment and was eventually sentenced to 55 months' imprisonment. During the sentencing process, a PSI was prepared and filed, to which Gomez filed his objections.

While Gomez's federal case was pending in the sentencing stage, Gomez was in the custody of the State of Florida, awaiting a trial for second-degree murder. Gomez notified the State that he intended to rely on a diminished-capacity defense at the murder trial; he claimed that the homicide was the product of post-traumatic stress disorder. Gomez, in state court, listed a medical expert as a potential witness; this witness seemingly was prepared to testify that Gomez suffered from post-traumatic stress at the time of the homicide. The

* Honorable Donald C. Pogue, Judge, United States Court of International Trade, sitting by designation.

expert's opinions were based on conversations with Gomez.

The state prosecutors requested that the district court disclose the portions of the PSI about Gomez's mental health.[1] The state prosecutors believed that information pertaining to Gomez's mental condition contained in the PSI might impeach Gomez's diminished-capacity defense in state court: Because the alleged murder and the preparation of the PSI were roughly contemporaneous, Gomez's failure to inform the probation officer who prepared the PSI of abnormal mental conditions might provide some evidence that Gomez contrived his claim of mental impairment for the murder trial. The State also argued that this information might be used to challenge the testimony of mental health experts offered by Gomez. The State requested no information in the PSI except that addressing Gomez's mental status.

Gomez objected to disclosure of the PSI's contents. Gomez did not contest, in principle, the district court's authority to disclose all or part of the PSI, but instead argued that the State failed to articulate with specificity and particularity what material the State expected to find in the PSI that would contradict the diminished-capacity defense in state court. Gomez further argued that the discussion of his mental state in the PSI had no relevance to his claim of mental diminishment at the time of the alleged murder.

The district court concluded that Gomez's mental health was at issue in the state court and that the PSI was potentially relevant.[2] The district court said the State articulated a particularized need for the information and that the need outweighed any chilling effect disclosure the PSI might have on the sentencing process. The district court then permitted disclosure of only that portion of the PSI that summarized Gomez's mental condition.

## DISCUSSION

■■■ The district courts have substantial supervisory powers over their records and files. *Nixon v. Warner Commun., Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). Control over these documents is a discretionary matter with the district court. *See United States v. Schlette*, 842 F.2d 1574, 1577 (9th Cir. 1988), *amended by* 854 F.2d 359 (9th Cir. 1988). We review the district court's exercise of its discretion to disclose a PSI for an abuse of that discretion. *See, e.g., United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir.1995); *Schlette*, 842 F.2d at 1576–77; *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1177 (2d Cir. 1983).[3]

■■■ The Supreme Court has commented that "in both civil and criminal cases the courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for

1. The State brought its motion to the district court through the United States Attorney's Office, who was also an advocate on this issue.

2. The district court reviewed the PSI *in camera* before determining that the PSI might be partially disclosed.

3. The district court's discretionary authority over the release of PSI material has been analogized to the standards governing the re-

lease of grand jury material due to a similar presumption against release of those materials to third parties. *See Huckaby*, 43 F.3d at 138; *United States v. Corbitt*, 879 F.2d 224, 238–39 (7th Cir.1989); *Charmer*, 711 F.2d at 1175. We review a district court's disclosure of grand jury materials for an abuse of discretion. *United Kingdom v. United States*, 238 F.3d 1312, 1319–21 (11th Cir.2001), *cert. denied, Raji v. United States*, 534 U.S. 891, 122 S.Ct. 206, 151 L.Ed.2d 146 (2001).

some other individual or individuals." *United States Dep't of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 1613, 100 L.Ed.2d 1 (1988). This observation by the Supreme Court supports the "general presumption that courts will not grant third parties access to the presentence reports of other individuals." *Huckaby,* 43 F.3d at 138 (internal quotation and citation omitted). This presumption is due, in part, to a general concern that the disclosure of PSIs to third parties will have a "chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report." *Julian,* 108 S.Ct. at 1613; *see also United States v. Trevino,* 89 F.3d 187, 191 (4th Cir.1996); *Huckaby,* 43 F.3d at 138; *United States v. Corbitt,* 879 F.2d 224, 232 (7th Cir.1989); *Charmer,* 711 F.2d at 1176. We have observed that "requiring disclosure of a presentence report is contrary to the public interest as it may adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused, and from sources independent of the accused, for use in the sentencing process." *United States v. Martinello,* 556 F.2d 1215, 1216 (5th Cir.1977). The free flow of information is essential to the federal district court's ability to render a fair sentence. *Charmer,* 711 F.2d at 1170; *Corbitt,* 879 F.2d at 232.

■ Other circuit courts have determined that a third party requesting disclosure of a PSI must demonstrate a "com-

pelling, particularized need for disclosure"; and, even when that need is demonstrated, the district court should take care—usually by way of *in camera* review—to ensure that the disclosure is limited to "those portions of the report which are directly relevant to the demonstrated need." *Corbitt,* 879 F.2d at 239; *see also Huckaby,* 43 F.3d at 138.[4] The compelling need must be one stated with particularity, as opposed to an abstract and conclusory expression of need. The Seventh Circuit noted that a party to "pending or contemplated litigation," who requires access to a presentence report "to impeach a witness, or to establish an affirmative proposition," would normally meet this need requirement. *Corbitt,* 879 F.2d at 239–40.

Even if we assume, for the sake of argument, that a test as strict as the "compelling need" test controls the release of PSI information to third parties in this Circuit, the State of Florida has articulated a sufficiently compelling need and has limited its request to only the materials necessary to meet that need. Gomez has indicated he intends to claim some form of mental diminishment at the state murder trial. Gomez has also given notice to the State of his intention to call a medical expert to testify to Gomez's mental diminishment. The district court could reasonably have determined that the opinions of this expert were based largely on interviews with Gomez and his declarations about his own mental state.[5] In addition, Gomez argued

---

4. The "compelling need" test is consistent with our requirements for disclosing grand jury materials. "Parties seeking grand jury materials 'must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only the material so needed.' " *United Kingdom,* 238 F.3d at 1320–21 (quoting *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979)).

5. The State argued at the motion hearing that the state prosecutors reviewed the information upon which Gomez's expert relied in forming his opinion. Much of that information came, according to the State, directly from Gomez. Gomez did not refute this contention. Whether or not this statement about Gomez is true is immaterial: it is enough that the record makes plausible the State's representation that the experts relied on information from Gomez.

to the district court that he was examined by two experts for the State. Because the mental stability of Gomez was the focus for these experts, it would have been reasonable for the district court to conclude that the opinions of these experts were also premised on declarations by Gomez.

When Gomez claims he suffered from post-traumatic stress disorder which contributed to the killing of another person, Gomez was also interviewed by a federal probation officer who was preparing the PSI in Gomez's federal case. The chief purpose of a PSI is to assist the district court in forming an appropriate sentence for a particular defendant. Gomez had every incentive to disclose to the district court—by way of the PSI—a mitigating circumstance that might reduce his federal sentence.[6]

An inconsistency between what Gomez told the probation officer and what Gomez told the mental health experts might impeach Gomez's claim of mental diminishment in state court, perhaps even exposing a fraud on the state court. Such an inconsistency might also alter the opinions of the experts, which rely on statements by Gomez.[7]

We accept that the State made an adequate and particular showing of need for information in the PSI, and we accept that the State's need outweighs the chilling effect that disclosure of the PSI might have on the sentencing process. The district court correctly limited disclosure of the PSI to those portions directly relevant to the State's articulated need. The district court's decision was within the borders of its permitted discretion.[8]

AFFIRMED.

---

6. Gomez's argument that his mental condition during the commission of his federal crimes has no relevance to his mental condition at the time of the homicide is, therefore, without obvious merit.

7. Gomez continues to argue that the State failed to articulate—with particularity or specificity—exactly what information the State expected to find in the PSI. Gomez contends that this inability to pinpoint specific information in the PSI demonstrates that the State is "fishing" for incriminating information. We doubt many third parties to a PSI could meet the standard of specificity proposed by Gomez without some prior knowledge of the contents of a PSI. It is enough that the State articulated its *need* for information with particularity.

8. Gomez also argues that his right against self-incrimination will be violated if the district court discloses limited contents of the PSI. Gomez contends that he was under a compulsion to provide information to the probation officer and that his cooperation with the Government should be analogous to a grant of use immunity. The Government—argues Gomez—has made an implicit promise not to use information in the PSI against him.

Gomez did not raise this argument in the district court. Issues not raised in the district court cannot be generally raised for the first time on appeal. *United States v. Everett*, 129 F.3d 1222, 1225 (11th Cir.1997). We decline to address Gomez's constitutional objection to disclosing a portion of the PSI.