[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 28, 2011
JOHN LEY
CLERK

No. 10-12808
Non-Argument Calendar
_____

D.C. Docket No. 1:08-cr-00363-TWT-RGV-19

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JUAN G. VIRAMONTES,
a.k.a. Maldito,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 28, 2011)

Before CARNES, KRAVITCH and BLACK, Circuit Judges.

PER CURIAM:

Juan Viramontes appeals both his convictions and the resulting sentence stemming from his involvement in a major marijuana and cocaine distribution ring operating between Mexico and Atlanta, Georgia. Following a government investigation of the ring, the grand jury handed down a long, multi-defendant indictment that charged Viramontes in four different counts. He pleaded not guilty and his case proceeded to a jury trial.

The government presented evidence that Viramontes worked for the drug ring as a truck driver, helping transport drug proceeds from Atlanta to Texas in his tractor-trailer. The jury found him guilty of the following: (1) conspiracy to possess with intent to distribute at least 5 kilograms of cocaine and/or 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii), and (vii); (2) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h); and (3) money laundering in the amounts of $1.1 million and $1.5 million, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. The district court entered judgment on the jury verdict and sentenced Viramontes to 235 months imprisonment. He now appeals both his convictions and his total sentence, raising six different issues with this Court. We consider each contention and the relevant facts in turn.

I.

Viramontes first contends that the district court abused its discretion in allowing Officer David Noe of the Drug Enforcement Administration and Sergeant Blake Swicord of the Georgia State Patrol to testify as experts under Federal Rule of Evidence 702, and in overruling Viramontes' objection that their testimony violated Rule 704(b) because they impermissibly opined about his mental state in relation to the underlying offenses.

Officer Noe testified at trial that his background included the following:  27 years of experience in law enforcement, 23 of which had been spent in narcotics investigations; numerous classes in drug investigation and identification; considerable experience with investigating Mexico-based drug trafficking organizations; and familiarity with the code language that drug traffickers use in wiretaps and the current wholesale prices of narcotics on the Atlanta market. After the court accepted Noe as an expert witness in the field of Mexico-based drug rings operating in Atlanta, Noe testified about the operational details of those organizations, including the fact that Mexican drug rings commonly transport cash proceeds from the United States back to Mexico, where it is easier to conceal the origins of the money.  Noe added that the transporters of the money are "commonly aware" of the assistance they are providing to the drug rings.

The government also relied on Georgia Patrolman Sergeant Swicord in making its case, offering him as an expert witness in commercial motor vehicle drug trafficking and money laundering. Swicord testified that he worked in a specialized unit that conducted operations on the interstates around Atlanta. His duties involved stopping "thousands" of commercial vehicles such as tractor-trailers and seizing large sums of money and narcotics. After the court accepted him as an expert, Swicord testified about a government surveillance videotape that was played in court and showed Viramontes picking up a delivery in his tractor trailer. Swicord pointed to numerous suspicious details about Viramontes' behavior that were "inconsistent with" his picking up a legitimate load. Those details included the fact that he opened only one of the two trailer doors to load, which meant that a forklift could not be used and cargo had to be loaded by hand. Swicord also pointed out that the entire loading took only four minutes and that Viramontes did not receive a bill of lading or inspect the cargo.

We review a district court's decision to admit expert testimony for an abuse of discretion. United States v. Brown, 415 F.3d 1257, 1264–65 (11th Cir. 2005). Under the abuse of discretion standard, the district court is allowed a range of choices, and we will affirm unless the district court applied the wrong law,

followed the wrong procedure, relied on clearly erroneous facts, or committed a clear error in judgment. Id. at 1265–66.

Under Rule 702, expert testimony is admissible if (1) the expert is qualified to testify regarding the subject matter of his testimony; (2) the methodology that the expert used to reach his conclusion is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). We have also recognized the "well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business." United States v. Garcia, 447 F.3d 1327, 1335 (11th Cir. 2006) (quotation marks omitted).

Federal Rule of Evidence 704 generally allows testimony pertaining to the ultimate issue, except that it forbids an expert witness from stating "an opinion or inference" as to the mental state or condition of a criminal defendant that constitutes an element of the crime charged. Fed.R.Evid. 704. We have distinguished between an expert expressly stating an inference, which is impermissible under Rule 704(b), and an expert leaving the inference for the jury to draw, which is permissible. United States v. Steed, 548 F.3d 961, 977 (11th

Cir. 2008). In Steed we held that Rule 704(b) did not bar a DEA agent's testimony that "it would be unlikely [that] crew members aboard a vessel carrying a large quantity of contraband would be unaware of its presence," because the agent did not expressly state the inference that the defendants were aware of the contraband. Id.

We hold that the district court did not abuse its discretion in allowing Officer Noe and Sergeant Swicord to testify as experts. The extensive training and experience of both officers was a sufficient basis for the court to conclude that they were qualified to render expert opinions. Furthermore, the testimony the officers did provide was not in violation of Rule 704(b). Although that testimony certainly gave rise to an inference that Viramontes knew he was transporting drug money, neither officer directly stated that Viramontes knew that; instead they left that inference for the jury to draw on its own. See Steed, 548 F.3d at 977.

## II.

Viramontes next contends that the district court abused its discretion by allowing Abraham Romero, a co-conspirator, to interpret recorded telephone conversations between other co-conspirators, including Viramontes. Romero was not a party to the calls himself, and Viramontes' counsel objected to Romero's testimony in part on that ground. The court overruled the objection, however,

allowing Romero to testify about the meaning of various code words and jargon used in the calls.

We review for abuse of discretion the district court's decision to admit or exclude evidence. United States v. Smith, 122 F.3d 1355, 1357 (11th Cir. 1997). Under Federal Rule of Evidence 701, opinion testimony offered by a lay witness is admissible when the opinion is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge [under Rule 702]." Fed.R.Evid. 701. Further, courts have "often allowed lay witnesses with similar inside knowledge to give their opinions as to the meaning of 'code words' used by fellow conspirators in taped conversations." United States v. Gaines, 170 F.3d 72, 77 (1st Cir. 1999); see also United States v. Awan, 966 F.2d 1415, 1428–31 (11th Cir. 1992) (finding no reversible error in trial court's decision to allow undercover agent to offer lay opinion testimony interpreting telephone calls to which he had been a party); United States v. Flores, 63 F.3d 1342, 1359 (5th Cir. 1995) ("By listening to the tapes, the [testifying] conspirators gained first hand knowledge of these conversations, which were admissible as co-conspirator statements . . . Their

opinions had a rational connection to this factual basis because they were members of the conspiracy and familiar with the events being discussed.").

The district court did not abuse its discretion in allowing Romero to interpret, as a lay witness, the telephone conversations among co-conspirators. Romero's testimony was rationally based on his perception as an insider to the conspiracy and was helpful for interpreting the coded conversations of his fellow drug traffickers.

### III.

Viramontes next contends that the district court abused its discretion in failing to give the jury a "good character" instruction that he had proposed. At trial Viramontes did not testify or proffer any good character evidence. The sole ground his counsel relied upon in requesting the good character instruction was that the jury could draw inferences from the state's case-in-chief that Viramontes had no prior criminal record and that his "papers and documents appear[ed] to be in order."

We review for abuse of discretion a district court's refusal to give a jury instruction that is requested by the defense. United States v. Chastain, 198 F.3d 1338, 1350 (11th Cir. 1999). Generally, a defendant must show the following in order for the denial of a requested jury instruction to be reversible error: the

instruction "(1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury." United States v. Brazel, 102 F.3d 1120, 1139 (11th Cir. 1997) (quotation marks omitted). Regarding the fourth prong, the defendant needs to present sufficient evidence to entitle himself to the good character charge because the law does not invest in him a presumption of good character. United States v. Thomas, 676 F.2d 531, 536–37 (11th Cir. 1982).

The record clearly shows that Viramontes did not testify or proffer any evidence as to his good character at trial. Given that, the district court did not abuse its discretion in denying his request for a good character instruction.

## IV.

Viramontes has another challenge to the jury instructions: he contends the district court erred in giving the jury the pattern charge on deliberate ignorance. That charge provided in relevant part:

> [Y]ou may find that a Defendant acted knowingly if you find beyond a reasonable doubt either: One, that the Defendant actually knew that he possessed money from distribution of a controlled substance; or two, that he deliberately closed his eyes to what he had every reason to believe was the fact.

He argues that the charge was inappropriate because the evidence pointed either to no knowledge or actual knowledge on his part. In making the objection at trial, Viramontes also argued that the pattern instruction was "impermissibly burden-shifting." The court overruled the objection, and the record shows that in addition to charging on deliberate ignorance, the court also charged the jury on the alternative theory of actual knowledge.

"We review the legal correctness of a jury instruction de novo, but defer on questions of phrasing absent an abuse of discretion." United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (citation omitted). Although a district court should not instruct a jury on deliberate ignorance when the evidence supports only actual knowledge or no knowledge, that instruction is appropriate "when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." United States v. Schlei, 122 F.3d 944, 973 (11th Cir. 1997) (ellipsis omitted). And at any rate, a deliberate ignorance instruction is "harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge." Steed, 548 F.3d at 977–78.

10

Viramontes' arguments are without merit.  As to his concern that the pattern deliberate ignorance charge impermissibly shifts the burden of proof, we note that the language of the charge itself puts on the government the burden of proving deliberate ignorance beyond a reasonable doubt.  Moreover, even if we assume for the sake of the argument that the district court did err in giving the deliberate ignorance charge, that error was harmless.  The jury was also instructed on the alternative theory of actual knowledge, and there was sufficient evidence for the jury to conclude that Viramontes actually knew that he was transporting drug proceeds.  See Steed, 548 F.3d at 977–78; see also United States v. Stone, 9 F.3d 934, 935 (11th Cir. 1993) (concluding that "any error in giving [a deliberate ignorance] charge in the absence of sufficient evidence is harmless when the instruction itself requires, as a precondition to its application, proof beyond a reasonable doubt of deliberate ignorance").

V.

Viramontes next contends that his total sentence of 235 months imprisonment was substantively unreasonable.  His main argument is that other co-defendants who drove trucks for the drug ring and were indicted for their participation did not receive as lengthy a sentence as he did.

11

Viramontes' PSR calculated that his Total Offense Level was 38 and his criminal history category was I. That made for an advisory guidelines range of 235 to 293 months. Although Viramontes made numerous objections to the PSR calculations at trial, all of which the district court overruled, he makes clear that he is not renewing those objections now. He concedes that the district court "did the calculations 'by the numbers' and all the rulings can be justified in themselves."

We review the reasonableness of a defendant's sentence under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 56, 128 S.Ct. 586, 600 (2007). The burden of establishing that a sentence is unreasonable lies with the party challenging the sentence. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "[W]hen the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Id. But whatever the sentence, in reviewing its reasonableness we must consider "the totality of the facts and circumstances," and we will reverse "if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1189, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).

One of the § 3553(a) factors requires the sentencing court to consider the need to avoid unwarranted sentencing disparities among similarly situated federal defendants. 18 U.S.C. § 3553(a)(6). But "[w]e have held that defendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009) (citing United States v. Williams, 526 F.3d 1312, 1323-24 (11th Cir. 2008)). Not only that, but: "There is no unwarranted disparity even when the sentence the cooperating defendant receives is substantially shorter." Id. (emphasis added) (quotation marks omitted).

Our review of the record and the 3553(a) factors does not leave us with the "definite and firm conviction" that the district court abused its discretion in imposing a sentence of 235 months. For one, that sentence was at the low end of the applicable guidelines range. For another, Viramontes was not similarly-situated to the other drivers, all of whom received less time. As the government argues to this Court, and as the district court itself noted at the sentence hearing, the other drivers all pleaded guilty and received reductions for acceptance of responsibility and safety-valve relief. In addition, Viramontes was convicted of more counts than the other drivers were, he transported more money than they did,

13

and he did so more often.  It was entirely reasonable that he received a longer sentence.

VI.

Finally, Viramontes contends the district court abused its discretion in denying his request to review the PSRs of all the other co-defendant truck drivers.  His counsel filed a motion to access those PSRs before the sentence hearing, and at the hearing itself he asserted that he needed them in order to develop his argument that his sentencing range was disproportionately higher than that of the other truck drivers in the conspiracy.  The government responded that there was "really no mystery" as to what had happened at the sentence hearings of Viramontes' co-defendants and as to how their sentences had been determined.  Further the government provided Viramontes with two of those PSRs on the spot, and the court allowed him a fifteen-minute recess to review them.

We review the district court's exercise of its discretion to disclose a PSR for an abuse of discretion.  United States v. Gomez, 323 F.3d 1305, 1307 (11th Cir. 2003).  The "general presumption" is that courts will not grant third parties access to the PSRs of other individuals due in part to a concern that disclosure would have a "chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report."  Id. at 1307–08 (quotation

14

marks omitted). But in Gomez we also observed that "[o]ther circuit courts have determined that a third party requesting disclosure of a [PSR] must demonstrate a compelling, particularized need for disclosure," and we assumed for the sake of our analysis in that case that a "compelling need test" controlled the release of PSR information in this Circuit as well. Id. at 1308.

But whatever the test is in this circuit, Viramontes has not shown sufficient need for the disclosure of the other PSRs, let alone compelling need. His counsel requested them in order to develop the argument that Viramontes' sentence was disproportionately higher than the sentences that other co-conspirator truck drivers received. But as we have already discussed, Viramontes was not similarly-situated to those other co-conspirators. The additional PSRs, even if they had been revealed, would not have helped him make the argument that his sentence was disproportionate.[1]

Finding no error on that ground or any other, we affirm Viramontes' convictions and his total sentence.

**AFFIRMED.**

---

[1] Viramontes has abandoned any other challenge to the procedural reasonableness of his sentence by failing to provide sufficient argument or legal support in his brief. See United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006).