# United States Tax Court

T.C. Memo. 2023-127

ALAN MICHAEL BERKUN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 22550-17.                              Filed October 23, 2023.

————————

*Joseph A. DiRuzzo III* and *Daniel M. Lader*, for petitioner.

*Kimberly A. Daigle*, *Michael K. Foster II*, *Alexander N. Martini*, *John T. Arthur*, and *Lauren B. Epstein*, for respondent.

## MEMORANDUM OPINION

URDA, *Judge*:  Petitioner, Alan Michael Berkun, challenges a notice of deficiency issued by the Internal Revenue Service (IRS) that determined deficiencies as well as civil fraud penalties under section 6663(a)[1] for his 2001 through 2005 tax years.  Before the Court is Mr. Berkun's motion to compel production of documents filed on September 1, 2021, as supplemented on June 14, 2022.

Mr. Berkun seeks to compel the Commissioner of Internal Revenue (Commissioner) to turn over the complete file from a grand jury investigation into Mr. Berkun, which the Commissioner obtained in 2019 pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure (Fed. R. Crim. P. 6(e)).  The Commissioner argues that section 6103(a)

———————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code or I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] limits disclosure of these materials and contends that he provided to Mr. Berkun all materials that fit within one of the exceptions set forth in section 6103(h)(4). We will deny the motion to compel.

*Background*

The following facts are derived from the parties' motion papers, pleadings, and stipulation of facts, along with the various supporting declarations and exhibits. They are stated solely for the purpose of deciding the pending motion to compel and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Mr. Berkun lived in Florida when he timely filed his petition, and an appeal in this case would ordinarily lie to the U.S. Court of Appeals for the Eleventh Circuit. *See* I.R.C. § 7482(b)(1)(A).

I.    *Mr. Berkun's Criminal Tax Case*

Mr. Berkun is a former attorney and financier with a history of criminal activity including securities fraud and money laundering. In 2012 he pleaded guilty to filing a false tax return for his 2004 tax year, receiving a sentence of 12 months' imprisonment and restitution to the IRS of $390,590.

Mr. Berkun's tax fraud conviction stemmed from an investigation by the IRS Criminal Investigation Division (CID). Mr. Berkun initially caught the IRS's attention during its scrutiny of two other parties, with the IRS eventually expanding its investigation to examine Mr. Berkun's 2001 through 2005 returns.

The IRS referred the matter to the U.S. Attorney's Office for the Southern District of Florida, which led to a grand jury investigation. In 2011 the United States filed an information against Mr. Berkun in the U.S. District Court for the Southern District of Florida (District Court), charging Mr. Berkun with filing a false tax return for 2004 in violation of section 7206(1).

The case was transferred to the U.S. District Court for the Eastern District of New York, where it was consolidated with assorted other criminal cases pending against Mr. Berkun. He thereafter agreed to plead guilty to a violation of section 7206(1) for tax year 2004 and to pay restitution in exchange for the United States' agreement not to bring "further criminal charges . . . against [Mr. Berkun] for knowingly and willfully filing false . . . tax returns for the tax years 2001 through 2005."

[*3] The parties specified that the agreement did not "limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due . . . for any time period covered by this agreement."

II.    *Notice of Deficiency and Tax Court Proceedings*

After the conclusion of the criminal proceedings, the IRS began a civil examination into Mr. Berkun's 2001 through 2005 tax liabilities. On August 4, 2017, the IRS issued a notice of deficiency for the years at issue that determined tax deficiencies totaling $1,918,706 and fraud penalties under section 6663(a) totaling $1,439,030. Mr. Berkun filed a timely petition in this Court, challenging both the deficiency and penalty determinations.

During discovery, the Commissioner sought grand jury materials from the District Court pursuant to Fed. R. Crim. P. 6(e). On August 27, 2019, the District Court ordered the release of these materials, which included "those documents and records obtained by grand jury subpoena and documents prepared by agents and analysts of IRS's CID, the Special Agent Report and the evidence exhibited with the Special Agent Report." The District Court explicitly recognized that the Commissioner had demonstrated a "particularized need" for the disclosure and that the materials "will be restricted by the [nondisclosure] provisions of [section 6103]." The District Court denied Mr. Berkun's motion for reconsideration, and the Eleventh Circuit thereafter affirmed the District Court's order authorizing disclosure of the grand jury materials.

Mr. Berkun thereafter made both informal and formal discovery requests for the grand jury materials. Although the Commissioner provided certain documents, he refused to provide the complete set on the ground that certain materials constituted third-party returns and that return information is shielded by section 6103. The Commissioner also pointed out that the "third-party records include not only the records of the third-party targets but also records of additional third parties obtained as part of the third-party targets' investigation."

Over nearly two years of motion practice, the parties have refined their positions. The Commissioner asserts that he has produced all grand jury materials that "fall within the nondisclosure exceptions in section 6103(h)(4)(B) and (C), as well as section 6103(e)(1)(C) and (D) and (e)(7)," including Mr. Berkun's own returns and return information. He has also filed with the Court a privilege log describing in general

**[\*4]** terms the documents he is withholding. Mr. Berkun responds that he is entitled to the disclosure of the grand jury materials in their entirety.

*Discussion*

I.    *Discovery Standards*

Rule 70(b)(1) permits discovery concerning "any matter not privileged that is relevant to the subject matter involved in the pending case." The party objecting to discovery has the burden of establishing that the information sought is not relevant or otherwise not discoverable. *See Rosenfeld v. Commissioner*, 82 T.C. 105, 112 (1984); *Rutter v. Commissioner*, 81 T.C. 937, 948 (1983); *Branerton Corp. v. Commissioner*, 64 T.C. 191, 193 (1975). The burden thus belongs to the Commissioner to demonstrate that section 6103(a) shields the grand jury materials in dispute.

II.    *Section 6103*

A.    *General Principles*

Section 6103(a) provides that "[r]eturns and return information shall be confidential" and that "no officer or employee of the United States" may disclose such information "except as authorized by this title." *See also Church of Scientology of Cal. v. IRS*, 484 U.S. 9, 16 (1987); *Mescalero Apache Tribe v. Commissioner*, 148 T.C. 291, 294 (2017). Return information is broadly defined to include

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the [IRS] with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

I.R.C. § 6103(b)(2)(A). As the Eleventh Circuit has put it, this definition encompasses "information that has passed through the IRS." *Ryan v.*

[*5] *United States*, 74 F.3d 1161, 1163 (11th Cir. 1996); *see also Mallas v. United States*, 993 F.2d 1111, 1118 (4th Cir. 1993) ("Taxpayer information obtained or prepared by the IRS, therefore, is 'return information' regardless of the person with respect to whom it was obtained or prepared.").

    B.    *Section 6103(h)(4)*

This case focuses on the authorization for disclosure embodied in section 6103(h)(4), which provides, in relevant part:

> A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—
>
> > (A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;
> >
> > (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding; [or]
> >
> > (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding . . . .

The Commissioner has argued that he has supplied all grand jury materials that fit within section 6103(h)(4)(B) and (C), and Mr. Berkun has cast no doubt on the Commissioner's representations.[2] We will accordingly accept the Commissioner's word.

---

[2] Mr. Berkun contended at one point that "substantially (if not literally) all of the grand jury materials that would otherwise be subject to default protection under Section 6103 must be disclosed pursuant to the exception under 26 U.S.C. § 6103(h)(4)(B)." The courts of appeals have reached different conclusions on whether section 6103(h)(4)(B) permits the disclosure of returns only or returns and return information. *Compare United States v. NorCal Tea Party Patriots* (*In re United States*),

**[*6]** Our analysis thus concentrates on section 6103(h)(4)(A); specifically, whether Mr. Berkun's case in this Court "arose out of, or in connection with" determining the civil or criminal tax liabilities of the third parties in the grand jury proceedings. As we have recently observed, the phrase "arose . . . in connection with determining the taxpayer's civil or criminal liability" is broader than the phrase "arose out of," and thus we will look to the former phrase for the outer limit of the disclosure authorization. *Whistleblower 972-17W v. Commissioner*, 159 T.C. 1, 13 (2022).

We begin with the word "arose," which Congress did not define when it enacted section 6103(h)(4)(A) in 1978. *See* Revenue Act of 1978, Pub. L. No. 95-600, § 503, 92 Stat. 2763, 2880. We consider the "term's 'ordinary, contemporary, common meaning' . . . when Congress enacted" the relevant provision. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). According to the contemporary edition of *Webster's Third New International Dictionary* at the time, the relevant primary meanings of "arise" are "to originate from a specified source," "to come into being," or "to become operative." *Arise, Webster's Third New International Dictionary* (1976).

For its part, "the phrase 'in connection with' establishes a standard that is 'quite broad,'" *Whistleblower 972-17W*, 159 T.C. at 15 (quoting *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 878 (D.C. Cir. 2019)), and we have previously interpreted it as meaning "related to," *Adams Challenge (UK) Ltd. v. Commissioner*, 154 T.C. 37, 63 (2020). We have recognized, however, that "[t]he phrase 'in connection with'" can also be read as "essentially 'indeterminat[e]' because connections, like relations, "'stop nowhere.'"" *Maracich v. Spears*, 570 U.S. 48, 59–60 (2013) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *see also Whistleblower 972-17W*, 159 T.C. at 15.

To avoid interpreting the phrase to have "impermissible, 'near-infinite breadth,'" *Whistleblower 972-17W*, 159 T.C. at 18 (quoting *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 278 (2016, revised Jan. 28, 2016)), we have looked for a "logical or causal connection" between the

---

817 F.3d 953, 962 (6th Cir. 2016) (concluding that section 6103(h)(4)(B) permits the disclosure of returns only), *and In re United States*, 669 F.3d 1333, 1339–40 (Fed. Cir. 2012) (per curiam) (suggesting the same), *with Tavery v. United States*, 32 F.3d 1423, 1430 (10th Cir. 1994) (allowing the disclosure of return information under section 6103(h)(4)(B)). The Eleventh Circuit has not spoken to this issue.

**[\*7]** earlier proceeding and the IRS's determination of a taxpayer's liability,[3] *id.* at 17 (quoting *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.)). In so doing, we keep in mind "the structure of the statute and its other provisions," *Maracich*, 570 U.S. at 60, and "exclude from the scope of section 6103(h)(4)(A) those proceedings that have only a 'remote relation to' the determination of a taxpayer's liability," *Whistleblower 972-17W*, 159 T.C. at 16; *see also Maracich*, 570 U.S. at 89 (Ginsburg, J., dissenting) ("[W]hen the Court has sought a limiting principle for similar statutory language, it has done so to prevent the application of a statute to matters with 'only a tenuous, remote, or peripheral connection' to the statute's core purpose." (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans*, 514 U.S. at 661)).

III.   *Analysis*

The Commissioner contends that section 6103(a) shields the remaining grand jury materials because they comprise returns and return information from (1) the two targets (besides Mr. Berkun) of the grand jury investigation and (2) other third parties whose information was obtained as part of the grand jury proceedings. Mr. Berkun argues that section 6103 does not protect materials acquired by the grand jury, even those originally obtained as part of the IRS investigation. He further asserts that section 6103(h)(4)(A) authorizes disclosure of all grand jury materials because this case arose "in connection with" determining the criminal tax liability of Mr. Berkun and the two third parties under investigation. The Commissioner has the better of the argument, and we will thus deny the motion to compel.

A.      *Section 6103 Applies to the Grand Jury Material.*

As an initial matter, the grand jury materials obtained in 2019 qualify for section 6103 protections and thus can only be disclosed pursuant to the exceptions enumerated in that statutory regime. The Code's broad definition of return information encompasses "any . . . data, received by, recorded by, prepared by, furnished to, or collected by the [IRS] with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof)." I.R.C. § 6103(b)(2)(A). In other words, return information includes

---

[3] To be clear, the "taxpayer" in this context refers to the person or entity whose returns and return information are being sought.

**[\*8]** "information that has passed through the IRS." *Ryan*, 74 F.3d at 1163; *see Mallas*, 993 F.2d at 1118.

In this case the District Court authorized the disclosure of grand jury materials to the IRS under Fed. R. Crim. P. 6(e), specifically anticipating that the protections of section 6103 would apply to such materials going forward. Upon transmission of the materials to the IRS, the protections of section 6103 attached.

Mr. Berkun's contentions to the contrary miss the mark. He first asserts that section 6103 does not apply because its terms do not include disclosure by the grand jury. Mr. Berkun is not seeking disclosure of materials from the grand jury, however, but from the Commissioner, who is most certainly covered by the strictures of section 6103.

Mr. Berkun next contends that the protections of section 6103 that originally attached to materials collected as part of the CID investigation were waived when those materials were given to the grand jury. This argument focuses on the wrong link in the chain: The critical inquiry is whether the grand jury materials obtained by the Commissioner here constitute return information, not whether protections had attached earlier.[4]

### B. *Section 6103(h)(4)(A) Does Not Authorize Disclosure.*

Mr. Berkun argues that, even if the grand jury materials qualify for the protections of section 6103 as a general matter, section 6103(h)(4)(A) authorizes disclosure in this proceeding. He

---

[4] We note that there is a split among four of the courts of appeals as to whether return information loses the protections of section 6103 when it is disclosed as part of a public judicial proceeding. *Compare Mallas*, 993 F.3d at 1120 (finding that no exception exists that would permit the disclosure of return information "simply because it is otherwise available to the public"), *and Rodgers v. Hyatt*, 697 F.2d 899, 906 (10th Cir. 1983), *with Rowley v. United States*, 76 F.3d 796, 801 (6th Cir. 1996) ("We therefore follow the Ninth Circuit in holding that, once a taxpayer's return information becomes part of the public domain . . . , it loses its confidentiality . . . ."), *and Lampert v. United States*, 854 F.2d 335, 338 (9th Cir. 1988). We believe that disclosure of return information as part of a grand jury investigation presents a markedly different situation given "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," *Rehberg v. Paulk*, 566 U.S. 356, 374 (2012) (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983)), and Congress expressly authorized such disclosures in this context, *see* I.R.C. § 6103(h)(2)(A). Although Mr. Berkun suggests that the material also might have been provided to financial institutions, he fails to develop this argument, and we accordingly decline to consider it.

[*9] premises his argument on the plain text of the disclosure authorization, asserting that this Tax Court proceeding arose out of the criminal investigation into Mr. Berkun and in connection with the concurrent criminal investigation into two third-party targets. According to Mr. Berkun, this connection is sufficient to require disclosure of the entire grand jury record.

We begin by revisiting the pertinent text in section 6103(h)(4)(A), which authorizes disclosure of a taxpayer's returns or return information in a judicial proceeding where "the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability." We first observe that this section limits disclosure to returns and return information of a taxpayer whose civil or criminal tax liability is being determined. To put it in layman's terms, the IRS (or the United States) must have looked into a taxpayer's civil or criminal tax liability before that person's returns or return information might be subject to disclosure under this provision.

In this case we have two distinct classes of third parties whose returns and return information are at issue: (1) the third-party targets of the IRS's criminal investigation (and later grand jury investigation) and (2) the third parties whose returns and return information were swept up in the course of these investigations. The civil or criminal liability of the former category was plainly being determined in the investigations. Third parties in the latter category, on the other hand, were essentially bystanders whose information was gathered in the course of determining others' liabilities. As the records of these third parties were not obtained in the course of determining their civil or criminal tax liabilities, section 6103(h)(4)(A) would not operate to authorize disclosure.

The question remains whether section 6103(h)(4)(A) authorizes the disclosure of the returns and return information of the third-party targets. As Mr. Berkun sees it, the "grand jury proceedings 'arose out of' the accomplices' proceedings in order to investigate [Mr. Berkun's] conduct 'in connection with' the conduct of the accomplices with respect to 'determining [those taxpayers'] civil or criminal liabilit[ies].'"

Mr. Berkun stretches the text of section 6103(h)(4)(A) past its breaking point. We begin by emphasizing that interpretation of this provision must account for the structure of the statute and its other provisions. *See, e.g.*, *Maracich*, 570 U.S. at 60; *Whistleblower 972-17W*, 159 T.C. at 16–17. Congress explicitly authorized disclosure where an

**[*10]** item on the return "is directly related to the resolution of an issue in the proceeding," I.R.C. § 6103(h)(4)(B), and the disclosure of both returns and return information where they "directly relate[] to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding," I.R.C. § 6103(h)(4)(C). If we were to credit Mr. Berkun's extremely expansive view of section 6103(h)(4)(A), both of these provisions would seem wholly superfluous. "An interpretation that renders a statutory provision superfluous should be avoided, since it would offend 'the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect.'" *Rhone-Poulenc Surfactants & Specialties, L.P. v. Commissioner*, 114 T.C. 533, 547 (2000) (quoting *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973)).

The connection between the case before us and the investigations into the third parties' criminal tax liabilities is tenuous at best. This case had its origins in a civil examination of Mr. Berkun. Although the civil examination followed Mr. Berkun's criminal prosecution per standard IRS policy, *see Mathia v. Commissioner*, T.C. Memo. 2009-120, 2009 WL 1471716, at *13 n.29 ("The delay of a civil matter until the resolution of a related criminal matter is a longstanding policy of the IRS."), *aff'd*, 669 F.3d 1080 (10th Cir. 2012), the examining agent did not have access to any of the grand jury materials. We struggle to see a sufficient legal or causal connection when the grand jury materials played no role in this proceeding.

The absence of connecting ligaments is brought into relief by our decision in *Whistleblower 972-17W*. In that case we concluded that the challenge to a whistleblower award arose "in connection with" determining the civil or criminal liabilities of three taxpayers and was therefore within the scope of section 6103(h)(4)(A). *Whistleblower 972-17W*, 159 T.C. at 18. We explained that "what the IRS determined with respect to the target taxpayers and what it collected from those taxpayers are key inquiries in analyzing the merits of this proceeding." *Id.* at 19. In our case, on the other hand, the IRS's determination regarding the civil or criminal liabilities of the third-party targets had no bearing on the resolution of Mr. Berkun's 2001 through 2005 tax liabilities or whether he is liable for the civil fraud penalty.

In an attempt to strengthen the attenuated connection between this case and the determining of the liabilities of the third-party targets by relying on the previous investigations into his criminal liabilities, Mr.

**[\*11]** Berkun points to an IRS policy in effect at the time the IRS began its civil examination of his 2001 through 2005 tax returns; namely, that a civil fraud penalty may not be removed absent IRS area counsel approval when a taxpayer has been referred for criminal prosecution regarding the same tax periods. *See Internal Revenue Manual* 25.1.6.2(8) (Nov. 5, 2014); *see also Hull v. Commissioner*, T.C. Memo. 2014-36, at \*4. Mr. Berkun argues that this policy demonstrates that this case originated in connection with the previous investigations. Assuming arguendo that this case arose in connection with the determining of his criminal tax liabilities, it does not follow that this case has anything but a remote connection with the determining of the third parties' liabilities.

We are likewise unpersuaded by Mr. Berkun's argument that the District Court's order authorizing disclosure of the grand jury materials demonstrates the necessary connection. According to Mr. Berkun, the District Court's conclusion that the Commissioner showed a compelling and particularized need for the specific grand jury materials (as required for disclosure under Fed. R. Crim. P. 6(e)), *see United States v. Aisenberg*, 358 F.3d 1327, 1348–49 (11th Cir. 2004); *United States v. Gomez*, 323 F.3d 1305, 1308 n.4 (11th Cir. 2003), necessarily establishes that this case arose in relation to the action of determining the third parties' liabilities.

Mr. Berkun reads too much into the District Court's action. The District Court plainly viewed the grounds for granting disclosure under Fed. R. Crim. P. 6(e) as distinct from the section 6103(h)(4) inquiry, as illustrated by its acknowledgment that the section 6103 protection would continue to apply to the grand jury material disclosed to the Commissioner.

IV. *Conclusion*

The Commissioner has established that the grand jury materials at issue are subject to the protection of section 6103(a). Mr. Berkun has failed to establish that these materials qualify for any exception to the general rule of nondisclosure, and we will accordingly deny his motion to compel, filed on September 1, 2021, and as supplemented on June 14, 2022.

To reflect the foregoing,

*An appropriate order will be issued.*